```
         IN THE UNITED STATES DISTRICT COURT
        FOR THE NORTHERN DISTRICT OF GEORGIA
                   ATLANTA DIVISION

UNITED STATES OF AMERICA       : CRIMINAL ACTION
                               :
          v.                   : No. 1:10-CR-285-CAP-ECS-1
                               :
OSCAR DAVID OLLERVIDES-SANCHEZ :
                               :
                               :
```

**ORDER FOR SERVICE OF REPORT AND RECOMMENDATION**

Attached is the Report and Recommendation of the United States Magistrate Judge in this action in accordance with 28 U.S.C. § 636(b)(1) and this Court's Criminal Local Rule 12.1(E).

Pursuant to 28 U.S.C. § 636(b)(1), within fourteen (14) days after entry of this order, each party may file written objections, if any, to the Final Report and Recommendation.  Pursuant to Title 18, United States Code, Section 3161(h)(1)(F), the above-referenced fourteen (14) days allowed for objections is **EXCLUDED** from the computation of time under the Speedy Trial Act.

Should objections be filed, they shall specify with particularity the alleged error or errors made (including reference by page number to the transcript if applicable) and shall be served upon the opposing party.  The party filing objections will be responsible for obtaining and filing the transcript of any evidentiary hearing for review by the District Court.  If no objections are filed, the Final Report and Recommendation may be adopted as the opinion and order of the District Court and any

AO 72A
(Rev.8/82)

appellate review of factual findings will be limited to a plain error review.  <u>United States v. Slay</u>, 714 F.2d 1093 (11th Cir. 1983), <u>cert.</u> <u>denied</u>, 464 U.S. 1050, 104 S.Ct. 729 (1984).

    The Clerk is directed to submit the Report and Recommendation with objections, if any, to the District Court after expiration of the above time period.

    **SO ORDERED**, this 29th day of December, 2010.

                                                  ***/s/ E. Clayton Scofield III***
                                                  E. Clayton Scofield III
                                                  UNITED STATES MAGISTRATE JUDGE

```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE NORTHERN DISTRICT OF GEORGIA
                     ATLANTA DIVISION

UNITED STATES OF AMERICA      : CRIMINAL ACTION
                              :
          v.                  : No. 1:10-CR-285-CAP-ECS-1
                              :
OSCAR DAVID OLLERVIDES-SANCHEZ :
                              :
                              :
```

**REPORT AND RECOMMENDATION**

This matter is before the Court on Defendant's motion to suppress evidence. [Doc. 26, 34]. The Court held an evidentiary hearing on the motion on September 2, 2010. [Doc. 31]. The final brief was filed on November 29, 2010. The motion is now ready for report and recommendation. For the reasons stated herein, the undersigned **RECOMMENDS** that the motion to suppress be **DENIED**.

## I.
## Issues

In his motion to suppress, Defendant seeks to suppress items seized from his person when he was arrested on the evening of June 30, 2010 - in particular two mobile phones - as well as evidence seized from a Ford F-150 truck that Defendant had recently occupied shortly before his arrest, more particularly, a quantity of methamphetamine found inside a washing machine located in the bed of the truck. The mobile phones were later searched pursuant to search warrants obtained after the arrest from a United States

3

AO 72A
(Rev.8/82)

Magistrate Judge.  Defendant contends that the search of the phones was illegal because the search warrants were tainted by the illegal seizure of the phones from Defendant's person.

Defendant argues that law enforcement lacked probable cause to arrest him.  He also argues that he did not abandon his privacy interest in the truck and that the officers lacked probable cause for the search of the truck.  Additionally, Defendant argues that the automobile exception to the warrant requirement does not apply in this case because Defendant had parked and left the vehicle and it was not mobile at the time of the search.  [Doc. 34, at 9].

The government responds that there was probable cause for the arrest and probable cause to search the truck.  The arrest being valid, the government contends that the search of Defendant's person incident to the arrest was valid.  The government further submits that with probable cause the truck could be searched without a warrant under the automobile exception to the warrant requirement.  The government also argues, among other things, that Defendant abandoned the truck and, therefore, has no standing to challenge the seizure of any items from it.  The government also contends, alternatively, that the community safety doctrine also permitted the officers to seize and secure the contraband from the truck.

## II.
## Factual Background

The events leading to Defendant's arrest and the search of the truck began when a confidential source ("CS") for the Drug Enforcement Administration ("DEA") agreed to introduce an undercover officer ("UC") to a contact source for the purpose of arranging the purchase of a quantity of methamphetamine. (T. 12-13).[1] The UC made contact with the source, known as Licenciado, and arrangements were made for the purchase of two to three pounds of meth. (T. 16). The transaction was originally to occur at 4:30 on the afternoon of June 30 but was moved to between six and 6:30 in the evening. (T. 15-16).

After discussions with Licenciado, the UC was contacted through the CS by an individual later identified as Defendant. (T. 17-18). A meeting was set at a Citgo station at Interstate 75 and Windy Hill Road. (T. 18). The UC and CS went to the Citgo and made contact with Defendant. (T. 18). Defendant arrived at this meeting as a passenger in a Ford Explorer. (T. 18-19). At that meeting, Defendant and the UC talked about locations to complete the transaction. (T. 22-23). The UC also had conversations with Licenciado during this time. (T. 23-24). At the Citgo, Defendant

---

[1] References to the September 2, 2010, evidentiary hearing, [Doc. 31], will be cited "(T. Pg)."

asked the UC and the CS to follow him to get the drugs, but the UC declined, for safety reasons, to agree to this. (T. 22-23, 42). At this meeting, Defendant was wearing the distinctive turquoise blue shirt that he wore throughout the events of that day. (T. 19).

Eventually, it was agreed that the transaction would be completed at Wendy's on Windy Hill not far from the Citgo. (T. 24-25). Licenciado advised the UC that Defendant would be driving a Ford pickup to the delivery and, speaking in code, told the UC that the drugs would be in a washing machine in the back of the truck.[2] (T. 25).

Defendant left the Citgo in the Ford Explorer and went to a nearby apartment at the Grand Villas where he and an individual in a gray shirt exited the vehicle and entered the apartment for a brief time and then returned to the Ford Explorer and drove to a Wal-Mart. (T. 47-48). Defendant was still wearing the turquoise shirt. (T. 48). After the trip to the Wal-Mart, the Ford Explorer left and went to another apartment complex where it stopped and Defendant got out and went into the woods at a tree line, then returned to the Ford Explorer and departed. (T. 48-49). The vehicle then proceeded to a "Super Mercado" nearby on Terrell Mill Road. (T. 49). The individual with the gray shirt was still

---

[2] Licenciado: "Pick up the 'clothes' [drugs] to wash and make sure 'soap' [money] is in there." (T. 25).

driving. (T. 49-50). Defendant was the front seat passenger. The vehicle then returned to the Grand Villas apartment and the two individuals spent about a half an hour there. (T. 50). All of these comings and goings were monitored by law enforcement surveillance.

Still under surveillance, the two then emerged from the apartment and Defendant, still wearing the turquoise shirt, drove a red Ford 150 pickup out of the apartment complex followed by the Ford Explorer. (T. 50-51). During this time, the UC received a call advising him that Defendant was en route to Wendy's bringing the meth. (T. 51). Both vehicles were under surveillance during this time. (T. 51-52). With the assistance of the Georgia State Patrol, the black Ford Explorer was pulled over on its way to the Wendy's, just shy of the meeting place. (T. 52-54). The red Ford pickup proceeded to the Wendy's and pulled into a parking space. (T. 54). Defendant got out, wearing the turquoise shirt. (T. 54). He looked around, back toward where the Ford Explorer should have been following him. (T. 54-55). He spoke on his phone. (T. 115). According to the officers, he looked confused. (T. 115).

After walking around a bit, Defendant crossed the five lanes of Windy Hill Road and appeared to be leaving the scene. (T. 55, 77). He was arrested in the vicinity of the Chick fil-A across Windy Hill from the Wendy's where the truck was parked. (T. 77,

7

89).  DEA Task Force Officer Gerald Dyar made the arrest.  (T. 89, 104).  Upon his arrest, Defendant was placed in handcuffs and searched.  (T. 104). Several items were taken from his person, including the mobile phones, some cigarettes, a statuette, a pen, his wallet and certain other items. (T. 90).  He also had the keys to the Ford pickup, (T. 79), which turned out to be registered in his name. (T. 64).  He was then taken back across the street to the Wendy's. (T. 106-107).  He was given Miranda[3] warnings at Wendy's. (T. 106).

By the time Defendant arrived back across the street, another officer had already leaned into the bed of the truck and opened the top of the washing machine.  (T. 100, 116).  Inside he found a plastic bag or bags containing a white substance that field-tested positive for methamphetamine.  (T. 110, 120, 126).

DEA Task Force Agent Geoff Furman, who had been the surveillance coordinator for the operation, prepared affidavits for search warrants pertaining to the mobile phones.  (T. 58). Applications were presented to United States Magistrate Judge Linda Walker for warrants to search the phones and Judge Walker signed the warrants.  (T. 58-60); [Gov. Exhs. 3-4].

---

[3] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966).

## III.
## Discussion

**A. The Search of Defendant's Person**

A law enforcement officer may lawfully arrest a person without an arrest warrant where the officer has probable cause to believe the arrestee has committed a felony and the arrest occurs in a public place. See Devenpeck v. Alford, 543 U.S. 146, 152, 125 S.Ct. 588 (2004) (warrantless arrest lawful when there is "probable cause to believe that a criminal offense has been or is being committed"); United States v. Goddard, 312 F.3d 1360, 1362-63 (11th Cir. 2002). A full search of an arrested person for both weapons and evidence is permitted when conducted as an incident to a lawful custodial arrest. See United States v. Robinson, 414 US 218, 235, 94 S.Ct. 467 (1973) (search incident to lawful custodial arrest "is not only an exception to the warrant requirement of the fourth amendment, but is also a 'reasonable' search under that [a]mendment"); United States v. Lyons, 403 F.3d 1248, 1254-55 (11th Cir. 2005) (search incident to arrest valid where officer had probable cause to arrest for disorderly conduct).

"Probable cause" to arrest is defined as "facts and circumstances sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." Gerstein v. Pugh, 420 U.S. 103, 111, 95 S.Ct. 854, 862, 43 L.Ed.2d 54 (1975)

AO 72A
(Rev.8/82)

(internal quotation marks, parentheses, and citations omitted). Probable cause may exist based on the collective knowledge of law enforcement officials derived from reasonably trustworthy information. Grider v. City of Auburn, 618 F.3d 1240, 1257 (11th Cir. 2010); Madiwale v. Savaiko, 117 F.3d 1321, 1324 (11th Cir. 1997).

In the instant case, Defendant's arrest was based upon probable cause to believe that he was engaged in a conspiracy to distribute methamphetamine in violation of federal law and possession with intent to distribute such drugs in violation of federal law. The facts supporting this finding of probable cause are recited above in the factual background section of this report and recommendation. A similar recitation is set forth in the affidavits submitted in support of the search warrants for the mobile telephones. See [Gov. Exhs. 3-4].

Defendant first came into contact with the UC and the CS in connection with their negotiations for a purchase of 2 to 3 pounds of methamphetamine. Defendant appeared at the Citgo station and discussed the details of the transaction with the UC. Arrangements were made between the UC and Defendant for the delivery. A delivery location was selected. The vehicle used to transport and store the drugs was specified in the telephone conversations among the UC,

10

Defendant, and Licenciado. Defendant proceeded to the meeting place in the specified vehicle, and was arrested.

There is no real dispute that all of the above facts support a finding of probable cause to arrest Defendant. And, having found probable cause for his arrest, there is no real dispute about the validity of the search of defendant's person incident to his arrest. See Goddard, 312 F.3d at 1364 ("Since the custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment, a search incident to the arrest requires no additional justification.")[4].

**B. The Search of the Ford F-150 Pickup**

**1. Standing**

Only a "person aggrieved" by an unlawful search and seizure may move to suppress seized property. Fed.R.Crim.P 41(g)-(h). In order to qualify as a person aggrieved under the Fourth Amendment, "a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is

---

[4] Finding probable cause is sufficient to end the inquiry. Even though the arresting officer may have viewed his detention of Defendant as an "investigatory detention," as opposed to a formal arrest, the search incident to arrest doctrine nonetheless applies. See United States v. Banshee, 91 F.3d 99, 102 (11th Cir. 1996)("[B]ecause there was probable cause for the arrest before the search and the arrest immediately followed the challenged search, the fact that [Defendant] was not under arrest at the time of the search does not render the search incident to arrest doctrine inapplicable.").

11

reasonable . . . ." <u>Minnesota v. Carter</u>, 525 U.S. 83, 88, 119 S.Ct. 469, 472 (1998); <u>United States v. Chaves</u>, 169 F.3d 687, 690 (11th Cir. 1999). The burden of proving standing is on the defendant. <u>United States v. Cooper</u>, 133 F.3d 1394, 1398 (11th Cir. 1998)(citing <u>United States v. Eyster</u>, 948 F.2d 1196, 1209 (11th Cir. 1991)).

Warrants are not required for searches and seizures of abandoned property. <u>Abel v. United States</u>, 362 U.S. 217, 241, 80 S.Ct. 683 (1960). "One who voluntarily abandons personal property in the Fourth Amendment sense abandons one's reasonable expectation of privacy in that property and cannot challenge the constitutionality of its subsequent search or seizure." <u>United States v. Anderson</u>, 754 F.Supp. 442, 443 (E.D.Pa. 1990) (citing <u>Abel</u>, 362 U.S. at 241) (citations omitted). "Abandonment is primarily a question of intent, and may be inferred from words spoken, acts done and objective facts." <u>U.S. v. Pirolli</u>, 673 F.2d 1200, 1204 (11th Cir. 1982)(<u>quoting</u> <u>United States v. Colbert</u>, 474 F.2d at 176 (5th Cir. 1973). Thus, the critical issue is "whether the person prejudiced by the search had voluntarily discarded, left behind, or otherwise relinquished his interest in the property in question so that he could no longer retain a reasonable expectation of privacy with regard to it at the time of the search." <u>Id.</u>

In this case, the undersigned cannot conclude that Defendant abandoned his privacy interest in the vehicle. He parked it on a

12

public street and left it while he crossed the street, only to be arrested in the Chick fil-A parking lot within approximately a block from where he left the truck. He had left the vehicle only a few minutes before he was arrested. He was still in the vicinity of the truck. He had the keys to the truck in his pocket. The vehicle was registered in his name. While Defendant may have been separating himself, at least temporarily, from his truck because of his concern about what the police might find, there is no basis to infer that Defendant did not intend to return to the truck, especially if law enforcement had not searched and seized it. The intent to abandon has not been established, and Defendant, therefore, has sustained his burden of showing standing.

**2. The Automobile Exception**

The "automobile exception" to the warrant requirement provides that, when there is probable cause to believe that contraband or evidence of a crime is in a vehicle, the vehicle may be searched without a warrant. Chambers v. Maroney, 399 U.S. 42, 48, 90 S.Ct. 1975 (1970). The initial justification for this exception was based upon the exigent circumstances related to the movability of the vehicle. Id. at 51. The Supreme Court has subsequently made clear that if there is probable cause to search a vehicle, and the vehicle is readily mobile, the Fourth Amendment permits the police to search the vehicle without more. Pennsylvania v. Labron, 518 U.S. 938,

13

940, 116 S.Ct. 2485 (1996) (citing California v. Carney, 471 U.S. 386, 393 (1985)). No special exigency is required beyond a showing of the mobility of the vehicle. See Maryland v. Dyson, 527 U.S. 465, 466-67, 119 S.Ct. 2013 (1999)(per curiam). In short, as stated by the Eleventh Circuit in United States v. Watts, 329 F.3d 1282, 1286 (11th Cir. 2003):

> [T]here are only two questions that must be answered in the affirmative before authorities may conduct a warrantless search of an automobile. The first is whether the automobile is readily mobile. All that is necessary to satisfy this element is that the automobile is operational. . . . The second prong of the test, probable cause, is determined under the facts of each case.

Addressing the two questions posed by the circuit court in Watts, first, there is no question that the vehicle in this case was readily mobile. It had been driven to the meeting place and parked there shortly before it was searched. It was movable; it was operational. "All that is necessary to satisfy this element is that the automobile is operational." Watts, 329 F.3d at 1286.

The second element, probable cause, was also clearly established. "Probable cause . . . exists when under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in the vehicle." U.S. v. Lindsey, 482 F.3d 1285 (11th Cir.2007) (quoting United States v. Tamari, 454 F.3d 1259, 1264 (11th Cir.2006) (citation and internal quotation marks omitted)). In this case, there was more than a fair

14

probability that methamphetamine would be found in the washing machine that was located in the back of the truck. The exchange of drugs for money had been arranged in multiple phone conversations with Defendant and with the individual known as "Licenciado." The UC had met with Defendant at the Citgo and discussed the details for the delivery. The officers were told the drugs would be in a washing machine in the back of a pickup truck at the agreed upon location. Defendant drove a truck with a washing machine in the back to the agreed location. In short, the second element necessary for the application of the automobile exception, probable cause, has been shown.[5]

**C. The Search Warrants for the Mobile Phones**

Defendant makes what amount to pro forma arguments regarding the sufficiency of the warrants issued by Judge Walker for search of the two mobile phones seized from Defendant at the time of his arrest. The primary argument is that the mobile phones were seized pursuant to an illegal arrest. As a result, he argues, the search warrants were the fruit of the poisonous tree. See [Doc. 34, at 10]. Because the undersigned has rejected the argument that

---

[5] In view of this conclusion regarding the applicability of the automobile exception, it is not necessary to address the government's argument that the service of the truck can be justified under the community safety doctrine.

15

AO 72A
(Rev.8/82)

Defendant's arrest was illegal, the undersigned likewise rejects the argument that the warrants were the fruit of the poisonous tree.

The other arguments made in a single paragraph in Defendant's motion regarding the sufficiency of the warrants are without merit. See [Doc. 26]. A review of the affidavit presented to Judge Walker for the warrants shows that they were sufficient to establish probable cause to search the two mobile phones.

## IV.
### Conclusion

In conclusion, the undersigned finds that Defendant's arrest was supported by probable cause and that the seizure of items from his person were justified as a search incident to his arrest. Secondly, the Court finds that Defendant has standing to challenge the search of the Ford F-150 in that an intent to abandon the vehicle does not appear from this record. On the merits, the undersigned finds that the search of the truck without a warrant was supported by probable cause under the automobile exception to the warrant requirement. As for the searches of the mobile phones conducted pursuant to the search warrants, the undersigned finds no infirmity with respect to the issuance of the warrants - the warrants were supported by probable cause. In summary, the undersigned **RECOMMENDS** that the motion to suppress evidence [Doc. 26, 34] be **DENIED**.

16

**SO REPORTED AND RECOMMENDED**, this 29th day of December, 2010.

/s/ *E. Clayton Scofield III*
E. Clayton Scofield III
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)